## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**HYDRAULIC RACE CO., INC.**
5978 Washington Street
Olcott, New York 14126

**HYDRAULIC RACE CO., LTD.**
5978 Washington Street
Olcott, New York 14126

**NIAGARA ZIPPER, LLC**
5978 Washington Street
Olcott, New York 14126

       Plaintiffs,

v.

**CITY OF LOCKPORT**
One Lock's Plaza
Lockport, New York 14094

**JASON DOOL**, individually and in his official
capacity as Building Inspector,
One Lock's Plaza
Lockport, New York 14094

**MICHELLE ROMAN**, individually and in
her official capacity as Mayor,
One Lock's Plaza
Lockport, New York 14094

**STEVEN ABBOTT**, individually and in his
official capacity as Police Chief,
One Lock's Plaza
Lockport, New York 14094

**LUCCA QUAGLIANO**, individually and in
his official capacity as Fire Chief,
One Lock's Plaza
Lockport, New York 14094

**COMPLAINT
AND JURY DEMAND**

Civil Action No.  24-CV-857

**STEVEN TARNOWSKI**, individually and in
his official capacity as a detective lieutenant
with the City of Lockport's Police Department,
One Lock's Plaza
Lockport, New York 14094

**PAUL BEAKMAN**, individually and in his
official capacity as the President of the
Lockport Common Council,
One Lock's Plaza
Lockport, New York 14094

**MEGAN BREWER**, individually and in her
official capacity as the Inspection Data
Coordinator / Zoning Officer of Lockport's
Building Inspection Department,
One Lock's Plaza
Lockport, New York 14094

**RICHELLE PASCERI**, individually and in
her official capacity as the Clerk for the City of
Lockport,
One Lock's Plaza
Lockport, New York 14094

**JOHN DOE(s),** individually and in their
official capacities,
One Lock's Plaza
Lockport, New York 14094

                    Defendants.

Plaintiffs, Hydraulic Race Co., Inc., Hydraulic Race Co., Ltd., and Niagara

Zipper, LLC (hereinafter, collectively referred to as "Plaintiffs"), by their attorneys, Rupp

Pfalzgraf LLC, as and for their complaint against the defendants, the City of Lockport, Jason

Dool, Mayor Michelle Roman, Steven Abbott, Lucca Quagliano, Steven Tarnowski, Paul

Beakman, Megan Brewer, Richelle Pasceri, and John Doe(s) (hereinafter, collectively referred to

as "Defendants"), allege as follows:

2

## JURISDICTION

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as Plaintiffs' claims arise under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

2.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

## VENUE

3.      Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) because all Defendants reside within this district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

4.      Plaintiff Hydraulic Race Co., Inc. is a corporation organized under the laws of the State of New York with its registered principal place of business at 5978 Washington Street, Olcott, New York 14126, but at all relevant times doing business out of 5 Gooding Street (aka "Hydraulic Race-Way"), Lockport, New York 14094.

5.      Plaintiff Hydraulic Race Co., Ltd. is a corporation organized under the laws of the State of New York with its registered principal place of business at 5978 Washington Street, Olcott, New York 14126, but at all relevant times doing business out of 5 Gooding Street (aka "Hydraulic Race-Way"), Lockport, New York 14094.

6.      Plaintiff Niagara Zipper, LLC is a limited liability company organized

under the laws of the State of New York with its registered principal place of business at 5978

Washington Street, Olcott, New York 14126, but at all relevant times doing business out of

5 Gooding Street (aka "Hydraulic Race-Way"), Lockport, New York 14094.

   7. Defendant City of Lockport is a municipal corporation duly organized and

existing under the laws of the State of New York and has an address at One Locks Plaza,

Lockport, New York 14094.

   8. Defendant Jason Dool was and is a resident of the County of Niagara, and

State of New York. He was and is the Building Inspector employed by the City of Lockport at all

times hereinafter mentioned, and he was acting within the scope of his employment and official

capacity as Building Inspector at the time of the incidents giving rise to this lawsuit. He is being

sued in both his individual and official capacities.

   9. Defendant Michelle Roman was and is a resident of the County of

Niagara, and State of New York. She was and is the Mayor of the City of Lockport at all times

hereinafter mentioned, and she was acting within the scope of her employment and official

capacity as Mayor at the time of the incidents giving rise to this lawsuit. She is being sued in

both her individual and official capacities.

   10. Defendant Steven Abbott was and is a resident of the County of Niagara,

and State of New York. He was and is the Chief of Police for the City of Lockport at all times

hereinafter mentioned, and he was acting within the scope of his employment and official

capacity as Chief of Police at the time of the incidents giving rise to this lawsuit. He is being

sued in both his individual and official capacities.

   11. Defendant Lucca Quagliano was and is a resident of the County of

Niagara, and State of New York. He was and is the Fire Chief for the City of Lockport at all

times hereinafter mentioned, and he was acting within the scope of his employment and official

capacity as Fire Chief at the time of the incidents giving rise to this lawsuit. He is being sued in

both his individual and official capacities.

12.     Defendant Detective Lieutenant Steven Tarnowski was and is a resident of

the County of Niagara, and State of New York. He was and is a Detective Lieutenant employed

by the City of Lockport Police Department at all times hereinafter mentioned, and he was acting

within the scope of his employment and official capacity as Detective Lieutenant at the time of

the incidents giving rise to this lawsuit. He is being sued in both his individual and official

capacities.

13.     Defendant Paul Beakman was and is a resident of the County of Niagara,

and State of New York. He was and is the President of Lockport's Common Council at all times

hereinafter mentioned, and he was acting within the scope of his employment and official

capacity as President of the Common Council at the time of the incidents giving rise to this

lawsuit. He is being sued in both his individual and official capacities.

14.     Defendant Megan Brewer was and is a resident of the County of Niagara,

and State of New York. She was and is the Inspection Data Coordinator / Zoning Officer of

Lockport's Building Inspection Department at all times hereinafter mentioned, and she was

acting within the scope of her employment and official capacity as the Inspection Data

Coordinator / Zoning Officer for the City at the time of the incidents giving rise to this lawsuit.

She is being sued in both his individual and official capacities.

15.     Defendant Richelle Pasceri was and is a resident of the County of Niagara,

and State of New York. She was the Clerk for the City of Lockport at all relevant times, and she

was acting within the scope of her employment and official capacity as the City Clerk at the time

of the incidents giving rise to this lawsuit. She is being sued in both his individual and official capacities.

16.     Defendants John Doe(s) are individuals whose identities are not yet known to Plaintiffs. Upon information and belief, they are employees of the City of Lockport who participated in the events giving rise to this lawsuit. They are being sued in both their individual and official capacities.

## NOTICE OF CLAIM

17.     On September 12, 2023, Plaintiffs timely filed a Notice of Claim with the City of Lockport, setting forth the facts underlying Plaintiffs' claims against the City of Lockport and those affiliated with and employed by the City.

18.     The City of Lockport examined Mr. Thomas Callahan, representative of the Plaintiffs, pursuant to General Municipal Law Section 50-h on March 26, 2024.

19.     Since the 50-h examination, settlement or payment by Defendants, including the City of Lockport, has been neglected or refused.

20.     This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to those state law causes of action stated herein that are subject to the requirements of General Municipal Law.

## FACTUAL BACKGROUND

18.     Plaintiffs operate businesses located at 5 Gooding Street, Lockport, New York 14094, including the Lockport Cave and Underground Boat Ride and Niagara Zipper, which are popular tourist attractions in Lockport, New York.

19.     Hydraulic Race Co., Inc. is a non-profit entity associated with the historic facilities at the same location.

20.     The Lockport Cave and Underground Boat Ride has been in operation for 27 years.  It provides historic guided walking tours of the Erie Canal, Locks 34 & 35, Locks 67-71, the underground power tunnels, and an underground boat ride for tourists and visitors.

21.     On June 12, 2023, at approximately 11:10 AM, an incident occurred during a boat tour in the Lockport Cave involving a vessel operated by Plaintiffs.

22.     At the time of the incident, the boat was being operated by an employee of Lockport Cave & Underground Boat Ride.

23.     The boat left the dock at approximately 10:50 AM with 28 passengers and 1 employee/operator.

24.     Approximately 15 minutes after the vessel left the dock, electricians working at the dock heard a loud noise coming from down in the Cave but couldn't see anything. They reported hearing screaming afterwards.

25.     During the June 12, 2023 incident, Plaintiff Thomas Callahan was present at the site with electricians when the accident occurred. He heard initial screams, which he later learned were the sounds of the boat beginning to flip.

26.     Plaintiff Callahan attempted to call 911 twice immediately after the incident but was unable to connect. He was forced to contact the mayor's secretary, Molly Lawson, to initiate emergency response.

27.     During the tour, the boat capsized, causing all 29 individuals on board to enter the water involuntarily.

28.     Tragically, one individual lost their life as a result of this incident.

29.     Immediately following the incident, emergency services were called, and first responders arrived at the scene to assist in the rescue and recovery efforts.

30.     The Lockport Police Department, Lockport Fire Department, and other emergency services responded to the incident and conducted rescue operations.

31.     Shortly thereafter, Police Chief Steven Abbott declared the underground tour area a crime scene. Based on Plaintiff's review of records they have received via FOIL, they are able to confirm that the City of Lockport Police Department was the lead agency that investigated the incident, and that they were assisted by the New York State Office of Parks, Recreation, and Historic Preservation.

32.     Upon information and belief, other agencies were involved in the investigation, including, but not limited to, the New York State Department of Environmental Conservation, the United States Coast Guard, and the United States Army Corps of Engineers. However, because the City of Lockport will not answer Plaintiffs' FOIL requests, as described in more detail below, Plaintiffs have been unable to confirm this fact at this point in the litigation. Upon further information and belief, the City's failure to respond to Plaintiffs' FOIL requests was coordinated by Defendants to prevent Plaintiffs from adequately investigating these claims.

33.     Despite the tragic nature of this incident, Plaintiffs believe that the more likely explanation for why the boat capsized is that a very heavy-set woman, upon information and belief, potentially weighing 300 pounds or more, jumped over the side of the boat because it was rocking when she was moving on the boat.

34.     This explanation is supported by eyewitness accounts and is consistent with the physical evidence at the scene.

35.     The Lockport Police Department, however, failed to properly identify and interview key witnesses present at the scene, including a tour guide who was with Plaintiff Callahan when police arrived. This tour guide remains unidentified in official reports, despite being present and interacting with investigators.

36.     On the day Defendant Jason Dool appeared at Plaintiffs' property and informed them they could not open, the aforementioned tour guide suggested to Plaintiff Callahan that Dool might be seeking a "kickback" to allow the business to reopen, indicating a potential pattern of corrupt behavior among city officials.

37.     In addition, safety instructions provided to passengers by Plaintiffs and their employees included not rocking the boat, not reaching out or dropping anything out of the boat, and loading one row at a time.

38.     However, instead of conducting a thorough and impartial investigation into the incident, Defendants engaged in a series of actions that violated Plaintiffs' constitutional rights and caused significant harm to their businesses.

39.     On or about June 13, 2023, Defendants ordered that the electrical meters at Plaintiffs' properties be dismantled and removed.

40.     This action was taken without proper notice to Plaintiffs and without providing Plaintiffs an opportunity to address any alleged issues or concerns.

41.     The removal of the electrical meters caused a complete loss of power to all of Plaintiffs' operations, including their visitor center, which contains telephones, Wi-Fi systems, cameras, alarm systems, reservation systems, and other critical business infrastructure.

42.     The power outage affected Plaintiffs' properties over a stretch of approximately 3,800 feet.

43.     Defendants' actions resulted in the shutdown of multiple revenue-generating operations, including the Lockport Cave Walking Tour, the Ghost Hunters Experience tour, the Lockport Haunted Cave tours, and the Niagara Zipper zipline.

44.     Defendants improperly declared Plaintiffs' entire property a "crime scene," including areas unrelated to the June 12, 2023 incident, such as the zipline operation.

45.     This overly broad designation of a "crime scene" prevented Plaintiffs from accessing their property and conducting business operations that were unrelated to the incident.

46.     Defendants failed to secure the property adequately after declaring it a crime scene, resulting in break-ins that caused damage to underground facilities and equipment.

47.     On or about June 15, 2023, Defendant Jason Dool, in his capacity as Building Inspector for the City of Lockport, issued a letter to Plaintiffs citing several alleged electrical issues and code violations at the Lockport Cave and Underground Boat Ride facility.

48.     Mr. Dool's letter did not cite any specific code sections that Plaintiffs were allegedly in violation of, making it difficult for Plaintiffs to address the purported issues.

49.     Without proper notice or justification, Mr. Dool ordered the power company (NYSEG) to interrupt power to the entire property, not just the cave portion where the incident occurred.

50.     This action effectively shut down all of Plaintiffs' business operations, including the Niagara Zipper attraction and the Lockport Cave Building, which were unrelated to the boat tour incident.

51.     The power interruption was unnecessary and overly broad, as the cave portion could have been easily isolated from the main power source without affecting the other business operations.

52.     Defendants' actions in shutting down Plaintiffs' entire business operations were arbitrary, capricious, and in violation of Plaintiffs' due process rights.

53.     Upon information and belief, defendant Jason Dool of the City of Lockport Code Enforcement Department was on site and entered the Lockport Cave facility on multiple occasions in July and August 2023 without authorization from Plaintiffs to conduct an inspection, however, by ordering the shutdown of Plaintiffs' power and thereby disabling their cameras Plaintiffs cannot be sure of this fact.

54.     This unauthorized entry constituted a violation of Plaintiffs' Fourth Amendment rights against unreasonable searches and seizures.

55.     Throughout the summer and fall of 2023, Defendants and other city officials, made numerous public statements and comments to the media that were defamatory and damaging to Plaintiffs' reputation and business interests.

56.     These statements included false and misleading claims about the safety of Plaintiffs' operations, the condition of their facilities, and their compliance with applicable laws and regulations.

57.     Plaintiffs maintain, however, that their safety practices were in line with industry standards and that they had operated for 27 years without a major incident prior to June 12, 2023.

58.     Nevertheless, Defendants made inaccurate statements and unfounded claims about Plaintiffs' businesses, directors, and employees to the public and media.

59.     These statements were derogatory, inflammatory, and misrepresented Plaintiffs and their officers to the public, causing reputational harm and loss of business.

11

60.     Defendants' conduct took place at One Lock's Plaza, in writing, and orally to various sources, including media outlets.

61.     On June 12, 2023, immediately following the fatal incident, Lockport Police Chief Steven Abbott made a statement to the media, saying, "We have one individual who has passed, we have a lot of questions that need to be answered. Whether or not that leads to charges in the future, I do not know, but as of right now we're treating it as a crime scene."

62.     Chief Abbott's statement falsely implied that the Plaintiffs may have engaged in criminal conduct, despite having no evidence to support such an implication. This statement caused immediate harm to the Plaintiffs' reputation and business interests.

63.     Throughout the summer of 2023, Mayor Roman consistently declined to provide updates on the status of the investigation into the June 12 incident, despite multiple inquiries from the media and the public.

64.     Mayor Roman's persistent refusal to provide information about the ongoing investigation fostered an atmosphere of suspicion around the Plaintiffs and their business practices, implicitly suggesting that there might be serious wrongdoing or negligence on the part of the Plaintiffs that warranted an extended investigation.

65.     This lack of transparency and failure to clarify the status of the investigation caused ongoing harm to the Plaintiffs' reputation and business interests, as it allowed public speculation about potential wrongdoing to continue unchecked.

66.     Mayor Roman's silence on the progress of the investigation, coupled with her earlier false statements about the attraction's safety record, created a narrative of suspicion and potential coverup that was deeply damaging to the Plaintiffs' public image and business prospects.

67.     On June 13, 2023, Lockport's chief building inspector, Jason Dool, conducted an inspection of the Lockport Cave premises and made several defamatory statements to the media regarding the safety conditions of the attraction.

68.     Dool stated that he found "a broken conduit that left wiring exposed, including to water; areas where the wrong wiring was used; and a rusted panel box."

69.     Dool further stated that "There were quite a few issues" and that some of the exposed wiring was "exposed to water."

70.     On June 13, 2023, Dool posted a sign on the door leading to the underground boat tour stating that the venue was unsafe for occupancy because of "electrical hazards."

71.     In fact, Defendant Dool posted multiple signs declaring the property unsafe for occupancy on various doors of Plaintiffs' property, including the Upson Park door, the Holly door, and the office door, demonstrating an excessive and potentially retaliatory approach to enforcement.

72.     Dool's statements and actions falsely implied that the Plaintiffs had been operating their business in an unsafe manner and in violation of applicable codes and regulations, causing significant harm to the Plaintiffs' reputation and business prospects.

73.     On August 28, 2023, after the Lockport Cave announced its reopening for walking tours, Dool made additional defamatory statements to the media.

74.     Dool stated, "To my knowledge, they have not corrected any of the electrical issues that were identified in the cave."

75.     Dool's statement falsely implied that the Plaintiffs were reopening their business without addressing safety concerns, despite having no recent communication with the

13

Plaintiffs regarding the status of the alleged electrical issues. This statement further damaged the Plaintiffs' reputation and ability to conduct business.

76.    On August 28, 2023, Lockport Common Council President Paul Beakman made several defamatory statements to the media regarding the safety of the Lockport Cave attraction.

77.    Beakman stated, "If you go back to the day of the incident, it was really chilling to have to see the police chief and fire chief claw through that wall with their bare hands to help initiate the rescue."

78.    Beakman further stated, "There's gotta be proper safety measures in place," implying that the Plaintiffs had been operating without proper safety measures.

79.    On August 29, 2023, Beakman made additional defamatory statements, saying "The owner was proposing that they do Lantern tours. It's just not a safe thing to do. There's no lit emergency exits. There still is only the exits down below."

80.    Beakman's statements falsely implied that the Plaintiffs were operating their business in an unsafe manner and without proper emergency exits or safety measures, causing further harm to the Plaintiffs' reputation and business interests.

81.    Throughout the summer of 2023, Mayor Roman and Police Chief Abbott repeatedly declined to provide updates on the status of the police-led investigation into the June 12 incident, fostering an atmosphere of suspicion around the Plaintiffs and their business practices.

82.    The statements and actions of Defendants, individually and collectively, have caused significant damage to Plaintiffs' reputation, business interests, and ability to operate their attraction safely and profitably.

83.     Defendants' false and defamatory statements were made with actual malice or with reckless disregard for their truth or falsity, as evidenced by their failure to properly investigate the facts before making public statements and their continued efforts to imply wrongdoing by Plaintiffs even in the absence of evidence.

84.     Defendants acted in bad faith to deprive and frustrate Plaintiffs' rights, making deceptive and misleading statements and producing misleading documentation.

85.     Defendants' actions and statements caused significant financial harm to Plaintiffs, including loss of business revenue, damage to their reputation, and inability to operate their businesses.

86.     On multiple occasions, Plaintiffs attempted to communicate with Defendants to address the alleged issues and work towards a resolution, but these efforts were largely ignored or rebuffed by Defendants.

87.     In addition, following the June 12, 2023 incident, Plaintiffs made multiple attempts to obtain information about the incident and the subsequent investigation through proper channels, including Freedom of Information Law (FOIL) requests.

88.     Despite these requests, the City of Lockport failed to disclose crucial public information to the Plaintiffs that would have assisted in their investigation of the incident. This information included, but was not limited to, police reports, investigation findings, and other relevant documents.

89.     This pattern of behavior is consistent with Defendants' persistent failure over the last ten years to properly respond to Plaintiffs' Freedom of Information Law (FOIL) requests to the City of Lockport, which seek various public records available under FOIL related

to their business operations, including but not limited to permits, inspections, and communications involving City officials.

90.     Throughout this period, the City of Lockport, under the direction of former City Clerk Richelle Pasceri, consistently failed to respond to these FOIL requests in a timely and complete manner as required by New York State law.

91.     Pasceri's pattern of obstructing and delaying responses to Plaintiffs' FOIL requests continued for over a decade, demonstrating a clear bias against Plaintiffs and their business interests.

92.     Following the June 12, 2023 incident, Plaintiffs, through their attorney George Muscato, made multiple attempts to obtain information about the incident and the subsequent investigation through proper channels, including FOIL requests.

93.     On or about July and August 2023, Muscato repeatedly requested the status of the investigation and the release of Plaintiffs' property, which had been locked and sealed by the Lockport Police Department.

94.     On August 10, 2023, Muscato sent correspondence to Police Chief Steven Abbott regarding the release of Plaintiffs' property, including locks and tape. The property remained locked at this time.

95.     On August 10, 2023, owner Thomas Callahan was forced to cut locks that had been unnecessarily placed on the access points to the property by the Lockport Police Department.

96.     Throughout August, September, and October 2023, Muscato continued to seek the release of Plaintiffs' property and the status of the investigation, but no investigation report was provided.

97.     On November 8, 2023, local news reported that no criminal charges would be filed in relation to the June 12, 2023 incident, yet Plaintiffs still had not received a copy of the investigation report.

98.     On November 9, 2023, Muscato again requested a copy of the investigation report, but no report was provided.

99.     On December 5, 2023, Muscato was notified that a formal FOIL request must be submitted to obtain the investigation report, despite his numerous previous requests.

100.    On December 12, 2023, the Lockport City Clerk, Sarah K. Lanzo, responded to Muscato's FOIL request, failing to meet the legal requirement of responding within 5 days. No report was provided at this time.

101.    On January 3, 2024, Muscato called the City Clerk regarding the status of the report and was told that Plaintiffs could obtain the report for a fee of $19.20 or more.

102.    On March 5, 2024, Plaintiffs submitted another FOIL request seeking specific information about the investigation report and its handling by city officials.

103.    On April 8, 2024, an attorney for the City of Lockport responded to the March 5 FOIL request, stating that additional time was needed and that a response would be provided by May 10, 2024, nearly two months after the initial request.

104.    The City's response also indicated that it would not provide answers to specific questions about the report's delivery and handling, despite these being crucial to understanding the City's treatment of information related to the June 12, 2023 incident.

105.    The consistent pattern of delays, incomplete responses, and failure to provide requested information demonstrates a coordinated effort by city officials, including

Defendant Richelle Pasceri, to obstruct Plaintiffs' access to public records and impede their ability to conduct their business and defend their interests.

106.    Upon information and belief, Defendant Megan Brewer, in her capacity as Inspection Data Coordinator / Zoning Officer for the City Building Inspection Department, has participated in this pattern of obstruction by failing to provide timely and complete responses to FOIL requests related to building inspections and zoning matters affecting Plaintiffs' business.

107.    Defendant Paul Beakman, as President of the Lockport Common Council, has been aware of these persistent FOIL violations and has failed to take appropriate action to ensure the City's compliance with state law, thereby perpetuating the discriminatory treatment of Plaintiffs.

108.    The actions and inactions of Defendants Pasceri, Brewer, and Beakman, in concert with other city officials, have caused significant harm to Plaintiffs, including but not limited to:

a) Impeding Plaintiffs' ability to respond to safety concerns and regulatory issues in a timely manner;

b) Preventing Plaintiffs from accessing crucial information needed to defend their business interests;

c) Causing financial harm through unnecessary delays in resuming business operations; and

d) Damaging Plaintiffs' reputation by allowing misleading or incomplete information to circulate without providing access to full and accurate records.

109.    The coordinated efforts of these Defendants to obstruct and delay Plaintiffs' access to public records constitute a violation of Plaintiffs' rights under the New York

State Freedom of Information Law and demonstrate a conspiracy to deprive Plaintiffs of their constitutional rights to due process and equal protection under the law.

110.    Conversely, the City of Lockport was providing the same documents and information to news media outlets and other third parties, demonstrating a clear bias against the Plaintiffs and an attempt to control the narrative surrounding the incident.

111.    The police report, which was eventually obtained by the Plaintiffs in December 2023, revealed that law enforcement had attempted to obtain a search warrant for Plaintiffs' properties. This information was not initially disclosed to the Plaintiffs.

112.    Upon information and belief, Judge DiMillo denied the request for a search warrant due to lack of probable cause. This fact was omitted from information provided to the public and the media, further demonstrating the Defendants' attempts to portray the Plaintiffs in a negative light without proper justification.

113.    The delay in providing this information to the Plaintiffs significantly hampered their ability to conduct a thorough and timely investigation into the incident, protect their legal rights, and address any potential safety concerns promptly.

114.    Plaintiffs have been experiencing persistent issues with Freedom of Information Law (FOIL) requests to the City of Lockport for approximately ten years, particularly during the tenure of former City Clerk Rochelle Pasceri.

115.    For example, between 2018 and 2023, Plaintiffs submitted multiple FOIL requests to obtain audio recordings of various city meetings relevant to their business operations.

116.    On at least five occasions, Defendant Rochelle Pasceri, in her capacity as City Clerk, failed to comply with the FOIL law, ignoring Plaintiffs' requests and conspiring with the Building Inspection Department to withhold requested information.

117.    Defendant Megan Brewer, in her capacity as an employee of the Building Inspection Department, colluded with other city officials to deny Plaintiffs' requests and prevent them from obtaining information necessary for potential legal actions.

118.    In one specific instance in 2018, Plaintiffs requested audio recordings of a city meeting they had attended. Despite Plaintiffs' knowledge that such recordings were routinely made to compile meeting minutes, city officials, including Defendant Brewer, claimed that no such recordings existed.

119.    City officials, including Defendant Pasceri, repeatedly denied or obstructed Plaintiffs' FOIL requests for audio recordings of planning board meetings, offering various contradictory excuses such as losing the tapes, claiming they were in archives, or denying that meetings were recorded at all.

120.    Upon information and belief, the planning board members, if questioned, would confirm that every meeting is recorded, contradicting the excuses provided by city officials for not producing the requested recordings.

121.    Upon information and belief, city officials, including Defendants, used alias email addresses to communicate about city business in an apparent attempt to avoid disclosure through FOIL requests, in violation of applicable laws requiring the use of official email addresses for city business.

122.    When Plaintiffs submitted FOIL requests for email communications, city officials responded that they had no information from the requested email addresses, effectively concealing communications conducted through alias email addresses.

123.    The pattern of withholding crucial public information and providing misinformation by city officials has significantly impeded Plaintiffs' ability to operate their business and defend their interests.

124.    This coordinated effort to obstruct Plaintiffs' access to public records and information demonstrates a conspiracy among city officials to violate Plaintiffs' constitutional rights and impede their business operations.

125.    Plaintiffs were forced to file an appeal in accordance with the Freedom of Information Law and notify the main office of the Committee on Open Government in Albany, New York of the City's failure to comply with their FOIL requests.

126.    The persistent failure of the City to respond to Plaintiffs' FOIL requests has significantly impeded Plaintiffs' ability to conduct their business operations and defend their interests in various matters.

127.    In addition, as stated above, prior to the June 12, 2023 incident, the Lockport Cave and Underground Boat Ride had been operating safely for approximately 27 years without any significant safety incidents.

128.    Regarding a 2015 incident involving a capsized boat that was discussed by Defendants in the media after this incident, contrary to statements made by city officials implying Plaintiffs' culpability, the incident was caused by the deliberate actions of passengers from the Father Baker organization.

129.    The passengers on the boat in the 2015 incident, who were described as having juvenile delinquency records, intentionally rocked the boat despite multiple warnings from Plaintiffs' staff to stop.

130.    Following the 2015 incident, Plaintiffs' insurance company made a payment to the Father Baker organization, which was accepted, and a settlement agreement was signed, avoiding litigation.

131.    Approximately five years after the 2015 incident, a chaperone from the Father Baker group visited Plaintiffs' office and admitted that the boat was intentionally flipped over by the passengers, despite warnings from Plaintiffs' staff.

132.    Despite having knowledge of the true circumstances of the 2015 incident, Defendant Mayor Michelle Roman and other city officials have repeatedly mischaracterized this incident in public statements, falsely implying that it was due to negligence or misconduct on the part of Plaintiffs.

133.    The mischaracterization of the 2015 incident by city officials, including Mayor Roman, has contributed to a false narrative about Plaintiffs' safety record and business practices, causing significant harm to Plaintiffs' reputation and business interests.

134.    The Mayor's public statements and actions regarding both the 2015 incident and the June 12, 2023 incident demonstrate a pattern of falsely attributing wrongdoing to Plaintiffs without proper investigation or consideration of available evidence.

135.    Throughout the summer of 2023, Mayor Roman consistently avoided reporters' questions about whether criminal charges would be filed against Plaintiffs in relation to the June 12, 2023 incident, despite having information that no such charges were warranted.

136.    Mayor Roman's evasiveness in responding to media inquiries left an air of suspicion about Plaintiffs' potential criminal liability, causing further damage to Plaintiffs' reputation and business interests.

137.    The actions of Mayor Roman, former City Clerk Pasceri, and other city officials in withholding information, mischaracterizing past incidents, and creating a false impression of Plaintiffs' culpability demonstrate a coordinated effort to harm Plaintiffs' business interests and reputation in the community.

138.    Plaintiffs maintained a comprehensive Emergency Action Plan, which included detailed procedures for various emergency scenarios, communication protocols, and safety measures.

139.    All tour guides, including the operator involved in the June 12, 2023 incident, received thorough training on safety procedures and emergency protocols.

140.    Despite the Defendants' implications of negligence, Plaintiffs had implemented and maintained safety measures that met or exceeded industry standards for similar attractions.

141.    Plaintiffs' commitment to safety is further evidenced by their regular inspections, maintenance procedures, and ongoing staff training programs.

142.    In the immediate aftermath of the June 12, 2023 incident, Plaintiffs made multiple attempts to contact emergency services. Due to connectivity issues, they were unable to reach 911 directly and had to contact the mayor's secretary to summon help.

143.    The police report failed to mention the presence of the fire department on the scene and did not accurately describe the initial response, including the fact that police initially went to the wrong location.

144.    These omissions and inaccuracies in the official reports further demonstrate the Defendants' failure to conduct a thorough and unbiased investigation into the incident.

145.     Upon information and belief, eyewitness accounts suggest that a passenger's actions may have contributed to the capsizing of the boat. Specifically, a video posted on social media appears to show a large woman jumping overboard, which could have destabilized the boat.

146.     Despite the existence of this potentially exculpatory evidence, Defendants failed to thoroughly investigate this aspect of the incident, instead focusing their efforts on attempting to assign blame to Plaintiffs.

147.     Defendants' actions throughout the investigation and subsequent proceedings demonstrate a clear bias against Plaintiffs, a rush to judgment without proper evidence, and a failure to conduct a thorough and impartial investigation.

148.     As a result of Defendants' actions and omissions, Plaintiffs have suffered significant damage to their reputation, loss of business, and ongoing financial hardship.

149.     Defendants' conduct has also caused Plaintiffs to incur substantial legal and professional fees in their efforts to obtain information, protect their rights, and defend against unwarranted accusations.

150.     On or about August 28, 2023, Mr. Dool appeared at Plaintiffs' property without notice and stated that they could not be operational due to alleged violations that had not been addressed. Mr. Dool failed to provide any written documentation of these alleged violations at that time.

151.     Plaintiffs, through their representative George Muscato, repeatedly requested meetings with city officials, including Mayor Roman and the Corporate Counsel, to discuss the situation and work towards a resolution. These requests were often ignored or delayed without justification.

152.    The electrical service to Plaintiffs' properties remained disconnected from approximately June 13, 2023, through the end of August 2023.

153.    During this period, Defendants failed to provide Plaintiffs with a clear explanation of alleged violations or a reasonable timeline for addressing any legitimate concerns.

154.    Defendants' actions prevented Plaintiffs from operating their businesses during the peak summer tourist season, resulting in substantial lost revenue.

155.    Throughout this period, Defendants continued to make public statements and take actions that were damaging to Plaintiffs' business interests and reputation, without providing Plaintiffs with an opportunity to address the alleged issues or defend themselves against the accusations.

156.    Defendants' actions demonstrate a pattern of targeting Plaintiffs' businesses for unfair and discriminatory treatment, in violation of their constitutional rights to equal protection under the law.

157.    The conduct of Defendants has caused Plaintiffs to suffer significant financial losses, including but not limited to lost revenue from the closure of their businesses, costs associated with addressing the alleged violations, legal fees, and damage to their business reputation.

158.    Defendants' conduct has caused irreparable harm to Plaintiffs' unique business interests and their ability to operate in the future.

159.    Defendants' actions have forced Plaintiffs to incur significant legal fees, expert fees, and other costs in their efforts to protect their rights and resume business operations.

160.    Upon information and belief, Defendants' actions were motivated by improper influences and personal vendettas rather than legitimate public safety concerns.

161.     Defendants have continued to pursue baseless enforcement actions against Plaintiffs, despite the lack of evidence of any imminent danger to the public.

162.     Defendants have treated Plaintiffs differently from other similarly situated businesses in the City of Lockport, including other boat tour operations and attractions.

163.     Defendants' conduct has violated multiple provisions of the Lockport City Code, state law, and federal law, including due process requirements and equal protection guarantees.

164.     Plaintiffs further contend that Defendants' failure to provide timely and complete information in response to FOIL requests, while simultaneously sharing information with media outlets, demonstrates a bias against Plaintiffs and an attempt to control the narrative surrounding the incident.

165.     The denial of the search warrant request by Judge DiMillo, due to lack of probable cause, further supports the Plaintiffs' assertion that the investigation was rushed and potentially biased.

166.     Plaintiffs maintain that they have suffered significant reputational and financial damage as a result of Defendants' actions and omissions throughout the investigation and subsequent proceedings.

167.     As a result of Defendants' actions, Plaintiffs have suffered and continue to suffer monetary damages, loss of business goodwill, reputational harm, and severe emotional distress.

168.     As a result of Defendants' actions, Plaintiffs have been deprived of their property rights without due process of law, have been subject to unreasonable searches and seizures, have had their reputation damaged by false and misleading statements, and have been

treated differently from other similarly situated businesses in violation of their right to equal protection under the law.

169.     In addition, on or about June 30, 2024, Plaintiffs discovered that the City of Lockport intended to launch Fourth of July fireworks from 71 Clinton Street, a property adjacent to Plaintiffs' property at 2 Green Street and in close proximity to their property at 5 Gooding Street.

170.     The City of Lockport failed to include Plaintiffs in the planning process for this event, despite the fireworks launch location being within 100 feet of Plaintiffs' zipline platform.

171.     This failure to inform or involve Plaintiffs in the planning process stands in stark contrast to previous years, when the City had included Plaintiffs as an additional insured on relevant insurance policies and involved them in security, transportation, EMS, and fire safety plans.

172.     On June 30, 2024, Plaintiffs alerted Mayor Lombardi to this situation, seeking an immediate dialogue with City officials.

173.     On or about July 1, 2024, Plaintiff Thomas Callahan met with Mayor Lombardi, Police Chief Abbott, Fire Chief, and City Clerk Sarah Lanzo to discuss the fireworks event.

174.     During this meeting, Police Chief Abbott acknowledged the existence of a safety plan for the event but refused to share it with Plaintiffs.

175.     The City's decision to proceed with fireworks plans without notifying or involving Plaintiffs represents a continuation of their pattern of withholding crucial public information from Plaintiffs.

176.    The City of Lockport not only failed to obtain permission from Plaintiffs to use their property for the fireworks event, but actually launched fireworks from Plaintiffs' property at 2 Green Street without any agreement or authorization.

177.    The safety zone required by law for the fireworks event extended well beyond 150 feet, encompassing both Plaintiffs' 2 Green Street property and their 5 Gooding Street property, including the area near Plaintiffs' zipline.

178.    The fireworks contractor expressed concern about proceeding with the event without a proper contract with the City, stating, "We're not firing these off if we don't have a contract with the city," further demonstrating the City's failure to follow proper procedures and obtain necessary agreements.

179.    This action by the City effectively constitutes an illegal taking of Plaintiffs' property without notice or compensation, endangering Plaintiffs' investment and security.

180.    The City's failure to proactively disclose this information to Plaintiffs, despite its clear relevance to their property and business operations, further demonstrates the ongoing pattern of FOIL violations and lack of transparency.

181.    This incident provides additional evidence of the City's retaliatory behavior towards Plaintiffs.

182.    The Lockport Police Department failed to include Plaintiffs in the planning and safety considerations for this event, despite the proximity of the launch site to Plaintiffs' property.

183.    When Plaintiffs attempted to contact the Lockport Police Department about an issue before the event, they were unavailable, demonstrating a lack of proper coordination and communication.

184.    The City of Lockport failed to obtain a contract or permission from Plaintiffs to use their property, which borders the fireworks launch area on two sides.

185.    Upon information and belief, the City of Lockport may have failed to obtain required mass gathering permits for the fireworks event.

186.    The Lockport Fire Department, unlike other city departments, did attempt to assist and coordinate with Plaintiffs regarding the fireworks event.

187.    The City of Lockport's actions regarding the 2024 fireworks event are part of a pattern of behavior, as similar exclusions of Plaintiffs from event planning occurred in 2019 and 2020.

188.    The City's failure to involve Plaintiffs in the fireworks planning process, as they had done in previous years, represents a departure from established procedure that appears to be motivated by bias against Plaintiffs.

189.    This change in the City's approach to involving Plaintiffs in events affecting their property rights occurred after Plaintiffs filed notices of claim related to the June 12, 2023 incident, suggesting a retaliatory motive.

190.    The City's actions regarding the fireworks event demonstrate a continued pattern of treating Plaintiffs differently from other similarly situated property owners, in violation of their right to equal protection under the law.

191.    The coordinated efforts of city officials, led by Police Chief Abbott, to exclude Plaintiffs from the planning process and withhold safety information related to the

fireworks event further evidences the ongoing conspiracy to violate Plaintiffs' constitutional rights.

192.    The City's actions regarding the fireworks event demonstrate a continued disregard for Plaintiffs' right to access public information that directly affects their property and business interests.

193.    This incident further illustrates the conspiracy among City officials, including Defendants Pasceri, Brewer, and Beakman, to withhold crucial public information from Plaintiffs, in violation of New York State's Freedom of Information Law and Plaintiffs' constitutional rights.

194.    The City's failure to involve Plaintiffs in the fireworks planning process, as they had done in previous years, represents a departure from established procedure that appears to be motivated by bias against Plaintiffs.

195.    This change in the City's approach to involving Plaintiffs in events affecting their property rights occurred after Plaintiffs filed notices of claim related to the June 12, 2023 incident, suggesting a retaliatory motive.

196.    The City's actions regarding the fireworks event demonstrate a continued pattern of treating Plaintiffs differently from other similarly situated property owners, in violation of their right to equal protection under the law.

197.    Defendants' conduct was willful, malicious, oppressive, and in reckless disregard of Plaintiffs' constitutional rights.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the Fourteenth Amendment**
**Procedural Due Process Violation under 42 U.S.C. § 1983**
**<u>Against All Defendants</u>**

198.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 183 of this complaint as if fully set forth here.

199.    Under the Fourteenth Amendment to the United States Constitution, no government official shall "deprive any person of life, liberty, or property, without due process of law."

200.    Plaintiffs had a property right to operate their businesses at the premises located at 5 Gooding Street, Lockport, New York 14094.

201.    Defendants deprived Plaintiffs of this property right without due process of law by: a) Arbitrarily shutting down Plaintiffs' businesses; b) Removing electrical meters without proper notice or justification; c) Declaring Plaintiffs' entire property a "crime scene" without proper basis; d) Preventing Plaintiffs from accessing their property and conducting business operations unrelated to the June 12, 2023 incident; e) Failing to provide Plaintiffs with a clear explanation of alleged violations or a reasonable timeline for addressing any legitimate concerns; f) Withholding crucial information obtained during the investigation while simultaneously sharing such information with media outlets.

202.    Defendants, including Rochelle Pasceri, Megan Brewer, and Paul Beakman, systematically deprived Plaintiffs of their procedural due process rights by consistently failing to respond to FOIL requests in a timely and complete manner as required by New York State law, with this pattern of obstruction persisting for approximately ten years.

31

203.    Defendants' actions in withholding audio recordings of city meetings, despite Plaintiffs' knowledge of their existence, constitutes a deliberate attempt to deny Plaintiffs access to information crucial for protecting their business interests and legal rights.

204.    The coordinated efforts of these Defendants to obstruct and delay Plaintiffs' access to public records, including audio recordings and other documents related to city meetings and decisions affecting Plaintiffs' business, constitutes a violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment.

205.    As a result of their actions and inactions, Defendants deprived Plaintiffs of their procedural due process rights.

206.    Defendants' conduct was committed under the color of state law.

207.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

208.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.


**SECOND CAUSE OF ACTION**

**Violation of the Fourteenth Amendment**
**Substantive Due Process Violation under 42 U.S.C. § 1983**
**Against All Defendants**

209.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 194 of this complaint as if fully set forth here.

210.    Defendants acted arbitrarily, oppressively, and in a conscience-shocking manner in shutting down Plaintiffs' businesses, including but not limited to: a) Removing electrical meters and causing a complete loss of power to all of Plaintiffs' operations; b) Preventing Plaintiffs from operating unrelated business activities such as the Niagara Zipper zipline; c) Making false and misleading public statements about the safety of Plaintiffs' operations and their compliance with applicable laws and regulations.

211.    Defendants' actions deprived Plaintiffs of their substantive due process rights guaranteed by the Fourteenth Amendment.

212.    Defendants' conduct was committed under the color of state law.

213.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

214.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## THIRD CAUSE OF ACTION

### Violation of the Fifth and Fourteenth Amendments
### Unlawful Taking under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

215.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 200 of this complaint as if fully set forth here.

216.    The actions of Defendants in shutting down Plaintiffs' businesses and preventing Plaintiffs from operating their businesses constituted a taking of Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, including but not limited to: a) Preventing Plaintiffs from operating revenue-generating activities such as the Lockport Cave Walking Tour, Ghost Hunters Experience tour, Lockport Haunted Cave tours, and the Niagara Zipper zipline; b) Causing Plaintiffs to lose business during the peak summer tourist season.

217.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

218.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## FOURTH CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Violation of the Equal Protection Clause under 42 U.S.C. § 1983
### Against All Defendants

219.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 204 of this complaint as if fully set forth here.

220.    The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

221.    The allegations described above demonstrate that Plaintiffs appear to have been singled out and treated very differently from other business owners in the City of Lockport.

222.    Defendants violated Plaintiffs' well-established rights under the Equal Protection Clause of the Fourteenth Amendment in that they deprived and/or seriously intruded on Plaintiffs' property rights, without due process of law, as well as denying them equal protection of the law by singling Plaintiffs out and treating them very differently from other businesses who may be in violation of one or more building codes but are actively working with the City to remediate those violations.

223.    Defendants Pasceri, Brewer, and Beakman, along with other city officials, engaged in a pattern of discriminatory behavior by consistently obstructing and delaying Plaintiffs' FOIL requests over a period of approximately ten years, while presumably responding to similar requests from other individuals or businesses in a timely manner.

224.    This disparate treatment in handling FOIL requests, particularly regarding audio recordings of city meetings and documents related to the 2015 incident, demonstrates a violation of Plaintiffs' right to equal protection under the law, as guaranteed by the Fourteenth Amendment.

225.    The actions of these Defendants show an intentional and arbitrary discrimination against Plaintiffs, as there is no rational basis for the differential treatment in processing FOIL requests or in the public characterization of incidents involving Plaintiffs' business.

226.    Plaintiffs have been singled out and treated differently without any rational basis for the differential treatment.

227.    The differential treatment accorded to Plaintiffs has been the result of intentional, malicious behavior by Defendants.

228.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

229.     The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## FIFTH CAUSE OF ACTION

**Violation of the Fourth, Fifth, and Fourteenth Amendments
Abuse of Process under New York State Law and 42 U.S.C. § 1983
<u>Against All Defendants</u>**

230.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 215 of this complaint as if fully set forth here.

231.     Defendants committed an abuse of process by utilizing proper processes to accomplish improper purposes, including but not limited to:

a)     Declaring Plaintiffs' entire property a "crime scene" to prevent access to areas unrelated to the June 12, 2023 incident;

b)     Using building code enforcement processes to shut down Plaintiffs' entire business operations rather than addressing specific safety concerns.

232.     Defendants Pasceri, Brewer, and Beakman abused the FOIL process by using it as a means to obstruct Plaintiffs' access to public information, including audio recordings of city meetings and documents related to the 2015 incident, thereby impeding Plaintiffs' ability to conduct business and defend their interests.

233.    This misuse of the FOIL process, persisting over a period of approximately ten years, demonstrates an ulterior motive and willful act in the use of process not proper in the regular conduct of the proceeding.

234.    Defendants' actions in repeatedly delaying, obstructing, and providing incomplete responses to Plaintiffs' FOIL requests constitute an abuse of process under New York State law and 42 U.S.C. § 1983.

235.    The improper purposes for Defendants' actions included, inter alia, to cause financial harm to the Plaintiffs due to Defendants' personal animus towards Plaintiffs; to harm the Plaintiffs' personal and professional reputation; to deprive the Plaintiffs of their property rights without affording the Plaintiffs proper notice and an opportunity to be heard; and to violate the Plaintiffs' rights secured to them by the Constitution of the United States.

236.    In accomplishing these improper purposes, Defendants employed legal process in an improper manner and with ulterior motives.

237.    Defendants deprived the Plaintiffs of the rights secured to them by the Constitution of the United States.

238.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

239.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## SIXTH CAUSE OF ACTION

**Violation of the Fourth, Fifth, and Fourteenth Amendments
Conspiracy to Violate Plaintiffs' Constitutional Rights under 42 U.S.C. § 1983**

**Against All Defendants**

240.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 225 of this complaint as if fully set forth here.

241.    Employees for the City of Lockport, while acting under the color of state law, conspired to deprive Plaintiffs of their rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments.

242.    The deprivation of Plaintiffs' constitutionally protected rights was carried out by all Defendants collectively as co-conspirators.

243.    Defendants entered into an agreement and acted in concert to inflict unconstitutional injury on Plaintiffs.

244.    Defendants had an agreement with each other to intrude on Plaintiffs' property rights without providing them adequate process and without following the City's procedure for doing the same.

245.    Defendants Pasceri, Brewer, and Beakman, in concert with other city officials including Mayor Roman, engaged in a conspiracy to deprive Plaintiffs of their constitutional rights by coordinating efforts to obstruct and delay responses to FOIL requests over a period of approximately ten years.

246.    This conspiracy involved a tacit understanding among the Defendants to use their official positions to prevent Plaintiffs from accessing public records necessary for the operation and defense of their business, including audio recordings of City meetings and documents related to the 2015 incident.

247.    The actions taken in furtherance of this conspiracy included, but were not limited to, deliberately delaying responses to FOIL requests, providing incomplete information,

denying the existence of known audio recordings, and mischaracterizing past incidents involving Plaintiffs' business to create a false narrative of negligence or misconduct.

248. Defendants are liable under 42 U.S.C. § 1983 for conspiring with each other to deprive the Plaintiffs of their constitutionally protected rights.

249. As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

250. The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT**
**First Amendment Retaliation under 42 U.S.C. § 1983**
**<u>Against All Defendants</u>**

251. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 236 of this complaint as if fully set forth here.

252. Immediately following the June 12, 2023 incident, Plaintiffs engaged in protected speech by:

a) Attempting to communicate with City officials about the incident and the status of their business operations;

b) Making public statements to the media about the incident and their safety practices;

c) Questioning the basis for the shutdown of their operations and removal of electrical meters;

d)      Requesting information about the investigation and the criteria for reopening their businesses.

253.    Plaintiffs' speech addressed matters of public concern, including public safety, the operation of a local business attraction, and the actions of city officials in response to the incident.

254.    Defendants' actions were motivated by retaliatory animus towards Plaintiffs' protected speech, including but not limited to:

e)      Shutting down Plaintiffs' businesses;

f)      Removing electrical meters without proper notice or justification;

g)      Declaring Plaintiffs' entire property a "crime scene" without proper basis;

h)      Preventing Plaintiffs from accessing their property and conducting business operations unrelated to the June 12, 2023 incident;

i)      Making false and misleading public statements about Plaintiffs' operations and safety practices;

j)      Withholding crucial information obtained during the investigation while simultaneously sharing such information with media outlets;

255.    Defendants' retaliatory actions would deter a person of ordinary firmness from continuing to engage in the protected speech.

256.    There was a causal connection between Plaintiffs' protected speech and Defendants' adverse actions, as evidenced by:

a)      The temporal proximity between Plaintiffs' attempts to communicate and question officials and the subsequent adverse actions;

b)      Disparaging comments made by Defendants about Plaintiffs' public statements;

c)      The selective enforcement of regulations against Plaintiffs' businesses;

d)      The continued adverse actions even after Plaintiffs attempted to cooperate with the investigation and address any legitimate safety concerns.

257.    As a direct and proximate result of Defendants' retaliatory actions, Plaintiffs have suffered substantial damages, including but not limited to, loss of business income, damage to business reputation, emotional distress, and costs associated with attempting to address the unjustified shutdown and investigation.

258.    Defendants' conduct was willful, wanton, and malicious, entitling Plaintiffs to punitive damages against the individual Defendants.


**EIGHTH CAUSE OF ACTION**

**Violation of the Fourteenth Amendment**
**Policy, Custom, and Practice of Defendants and**
**Failure to Supervise and Train under 42 U.S.C. § 1983**
**Against the City of Lockport**

259.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 244 of this complaint as if fully set forth here.

260.    Defendant the City of Lockport developed and maintained policies, customs, and practices exhibiting deliberate indifference to the Plaintiffs' property rights.

261.    At all relevant times, the City was aware that its employees and agents were inadequately trained regarding citizens' property and procedural due process rights under the Fifth and Fourteenth Amendments, yet the City of Lockport maintained a policy or custom of

41

failing to provide its employees and agents training on the Fifth and Fourteenth Amendments or adequate supervision over them.

262.    It was the policy or custom, or both, of the City of Lockport to inadequately supervise and train its employees and agents, thereby failing to prevent the constitutional violations against Plaintiffs.

263.    Upon information and belief, the City of Lockport maintained a policy, custom, or practice of interfering with Plaintiffs' property rights and retaliating against Plaintiffs for exercising their First Amendment rights in criticizing the City of Lockport and its agents by interfering with and affecting their personal and business relationships and reputation.

264.    The City of Lockport failed to properly screen and supervise the employees who worked for the City, which allowed Defendants to retaliate against Plaintiffs for a valid exercise of their First Amendment rights. The City of Lockport retained or allowed its agents to be retained despite their history of inappropriate and unlawful acts that were documented and known to the appropriate policymakers in the City.

265.    Upon information and belief, City of Lockport policymakers, including, but not limited to, Mayor Michelle Roman and Police Chief Steven Abbott, condoned and encouraged the inappropriate behavior by Defendants herein.

266.    Defendant City of Lockport's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons and businesses within the City of Lockport, including Plaintiffs, and it therefore caused the violation of Plaintiffs' rights.

267.    Defendant City of Lockport ratified and acquiesced in the unlawful conduct of the other defendants, as is evidenced by the City of Lockport's failure to discipline and/or correct the bad behavior of the other defendants.

268.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

269.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that the Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.


### NINTH CAUSE OF ACTION

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Unreasonable Search and Seizure under 42 U.S.C. § 1983**
**Against Jason Dool**

270.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 255 of this complaint as if fully set forth herein.

271.    At all times, Plaintiffs enjoyed and possessed a right under the Fourth and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in their person, home, personal effects, and property.

272.    As described above, defendant Jason Dool, in his capacity as Building Inspector for the City of Lockport, appeared at Plaintiffs' property on numerous occasions without notice and conducted an unreasonable inspection without proper authorization.

273.    Defendant Dool's actions constituted an unreasonable search and seizure in violation of Plaintiffs' Fourth Amendment rights.

274.    As a direct and proximate result of the unlawful actions of defendant Dool, as alleged herein, this defendant deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendment to be free from unreasonable search and seizure.

275.    The conduct of defendant Dool was outrageous, intentional and malicious, or at the very least grossly negligent, exhibiting a reckless disregard and deliberate indifference for Plaintiffs' rights.

276.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

277.    The aforesaid conduct by defendant Dool was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against him in an amount commensurate with the wrongful acts alleged herein.


### TENTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### IN VIOLATION OF NEW YORK STATE LAW
### Against All Defendants

278.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 263 of this complaint as if fully set forth herein.

279.    Defendants' actions, including but not limited to shutting down Plaintiffs' businesses, removing electrical meters, and declaring the entire property a "crime scene," intentionally interfered with Plaintiffs' existing contractual relationships.

280.    Defendants' interference caused Plaintiffs' customers to breach their contracts or rendered performance of these contracts impossible.

281.    Defendants' actions were not justified and were carried out with the intent to harm Plaintiffs' business interests.

282.    As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered substantial economic losses and damage to their business reputation.

283.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## ELEVENTH CAUSE OF ACTION

### TRESPASS IN VIOLATION OF NEW YORK LAW
### Against Defendant Jason Dool

284.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 269 of this complaint as if fully set forth herein.

285.    Plaintiffs are the lawful owners and/or occupants of the property located at 5 Gooding Street, Lockport, New York 14094.

286.    On the dates above, Defendant Jason Dool, without Plaintiffs' consent or lawful authority, intentionally entered upon Plaintiffs' property.

287.    Defendant Dool's entry onto Plaintiffs' property was unlawful and unauthorized.

288.    Defendant Dool's trespass interfered with Plaintiffs' right to exclusive possession of their property.

289.    As a direct and proximate result of Defendant Dool's trespass, Plaintiffs have suffered damages, including but not limited to loss of use of their property and business interruption.

290.    The aforesaid conduct by Defendant Dool was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against him in an amount commensurate with the wrongful acts alleged herein.

## TWELFTH CAUSE OF ACTION

## DEFAMATION IN VIOLATION OF NEW YORK STATE LAW
### Against All Defendants

291.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 276 of this complaint as if fully set forth herein.

292.    Defendants, as described above, made numerous public statements and comments to the media that were false and defamatory regarding Plaintiffs' business operations, safety practices, and compliance with applicable laws and regulations.

293.    These statements were published to third parties, including various media outlets and the general public.

294.    The statements were false and Defendants knew or should have known they were false at the time they were made.

295.    The statements were made with actual malice or with reckless disregard for their truth or falsity.

296.    These false statements have caused significant damage to Plaintiffs' reputation and business interests.

297.    As a direct and proximate result of Defendants' defamatory statements, Plaintiffs have suffered substantial economic losses and damage to their business reputation.

298.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.


## THIRTEENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**IN VIOLATION OF NEW YORK STATE LAW**
**<u>Against All Defendants</u>**

299.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 284 of this complaint as if fully set forth herein.

300.    Defendants' conduct, including but not limited to arbitrarily shutting down Plaintiffs' businesses, making false public statements, and interfering with Plaintiffs' property rights, was extreme and outrageous.

301.    Defendants acted with the intent to cause, or in reckless disregard of a substantial probability of causing, severe emotional distress to Plaintiffs.

302.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered severe emotional distress.

303.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

**FOURTEENTH CAUSE OF ACTION**

**NEGLIGENCE/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**IN VIOLATION OF NEW YORK STATE LAW**
**<u>Against All Defendants</u>**

304.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 289 of this complaint as if fully set forth herein.

305.    Defendants owed a duty of care to Plaintiffs to exercise reasonable care in the performance of their official duties and in their interactions with Plaintiffs' business operations.

306.    Defendants breached this duty of care by, among other things:

a.    Failing to properly investigate the June 12, 2023 incident before taking drastic actions against Plaintiffs' businesses;

b.    Negligently declaring Plaintiffs' entire property a "crime scene" without proper justification;

c.    Failing to provide Plaintiffs with adequate notice and opportunity to address alleged violations before shutting down their businesses;

d.    Negligently making public statements about Plaintiffs' operations without verifying the accuracy of such statements.

307.    As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered substantial economic losses, including but not limited to loss of business income, damage to business reputation, and costs associated with addressing the consequences of Defendants' actions.

308.    The conduct by Defendants was grossly negligent and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## **DEMAND FOR JURY TRIAL**

309.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

## **PRAYER FOR RELIEF**

Plaintiffs pray for relief and demand judgment as follows:

1.     That Plaintiffs be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2.     That Plaintiffs be awarded punitive damages against all Defendants in an amount to be determined at trial;

3.     That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiffs reasonable attorneys' fees, together with the costs of this action against all Defendants; and

4.     That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:     September 12, 2024
            Buffalo, New York

                         **RUPP PFALZGRAF** LLC
                         *Attorneys for Plaintiffs*


                         *s/Chad A. Davenport*
                         R. Anthony Rupp III, Esq.
                         Chad A. Davenport, Esq.
                         1600 Liberty Building
                         Buffalo, New York  14202
                         (716) 854-3400
                         rupp@rupppfalzgraf.com
                         davenport@rupppfalzgraf.com